Matter of Rebekah R. v Richard R. (2019 NY Slip Op 07457)





Matter of Rebekah R. v Richard R.


2019 NY Slip Op 07457


Decided on October 17, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 17, 2019

527021

[*1]In the Matter of Rebekah R., Respondent,
v
Richard R., Appellant.

Calendar Date: September 12, 2019

Before: Garry, P.J., Clark, Mulvey and Pritzker, JJ.


Rural Law Center of New York, Castleton (Kristin A. Bluvas of counsel), for appellant.
Dennis Laughlin, Cherry Valley, for respondent.
Larisa Obolensky, Delhi, attorney for the children.



Clark, J.
Appeal from an order of the Family Court of Otsego County (Lambert, J.), entered May 21, 2018, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for permission to relocate with the parties' children.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of two children (born in 2011 and 2013). Pursuant to an October 2016 custody order, entered upon consent, the parents shared joint legal custody of the children, with the mother having primary physical custody and the father having parenting time as he and the mother could reasonably agree. In November 2017, the mother commenced this modification proceeding seeking permission to relocate out of state with the children. Following a fact-finding hearing, at which only the mother and the father testified, Family Court granted the mother's petition, ordered that the father continue to have parenting time with the children "as the parties may reasonably agree[,] with a minimum period of time to be established by the parties," and directed that, to the extent not modified, all other terms set forth in the October 2016 custody order remain in full force and effect. The father appeals, primarily arguing that Family Court's determination to permit the mother to relocate with the children is not supported by a sound and substantial basis in the record.
The "custodial parent's proposed relocation provides the change in circumstances that is ordinarily necessary to modify an existing custody order" (Matter of BB.Z. v CC.AA., 166 AD3d 1334, 1335 [2018]; accord Matter of Michael BB. v Kristen CC., 173 AD3d 1310, 1311 [2019]; see Matter of Perestam v Perestam, 141 AD3d 757, 757-758 [2016]). In such cases, the burden falls on the parent seeking permission to relocate with the children to establish, by a preponderance of the evidence, that the proposed move is in the best interests of the children (see Matter of Hoppe v Hoppe, 165 AD3d 1422, 1423 [2018], lvs denied 32 NY3d 912, 913 [2019]; Matter of Hempstead v Hyde, 144 AD3d 1438, 1439 [2016]). In assessing the children's best interests, Family Court must consider "the totality of the circumstances, including 'each parent's reasons for seeking or opposing the move, the quality of the relationships between the child[ren] and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child[ren]'s future contact with the noncustodial parent, the degree to which the custodial parent's and child[ren]'s li[ves] may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and the child[ren] through suitable visitation arrangements'" (Matter of Michael BB. v Kristen CC., 173 AD3d at 1311, quoting Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1996]). We accord great deference to Family Court's custody modification determinations, given that it is in a superior position to evaluate testimony and assess witness credibility and, thus, we will not disturb such a determination if supported by a sound and substantial basis in the record (see Matter of Lynk v Ehrenreich, 158 AD3d 1004, 1005 [2018], lv denied 31 NY3d 909 [2018]; Matter of Teri v Elliott, 122 AD3d 1092, 1093 [2014]).
The evidence established that the mother became unemployed shortly before the hearing, when the store at which she was employed as a supervisor closed. The evidence also demonstrated that the mother's limited education and employment history, having worked within the home for several years, made it difficult for her to find work in or around her rural town. The mother testified that her employment prospects were further limited by a lack of child care, as she did not have nearby family members that could help her, and the father's family no longer spoke to her. Photographic and testimonial evidence also demonstrated that the home in which the mother lived with the children and the children's two half siblings had sustained considerable water damage, which was causing the ceiling and floors to collapse, and that the home also suffered from a rodent infestation. The mother stated that, in addition to the significant safety and sanitation concerns posed by the home's condition, the state of the home also hindered the children socially because they were unable to invite friends over. The mother, who was receiving public assistance at the time of the hearing, testified that she did not have the financial means to remedy the unsafe and unsanitary conditions of the home and that, although he owned the home with her, the father had refused to assist with the necessary repairs. Rather, as acknowledged by the father during his testimony, the father had proposed that the mother find a "new man" to perform or pay for the repairs.
The mother testified that, given her dire living situation and financial state, she desired to relocate with the children to Phoenix, Arizona, where the children's maternal grandfather and step-grandmother, as well as other extended family, resided. She stated that Arizona presented greater employment and educational opportunities for her and that she and the children could live rent free with the children's maternal grandparents in a three-bedroom house. The foregoing evidence amply supports Family Court's conclusion that the mother's proposed relocation to Arizona would likely enhance the lives of the mother and the children economically, emotionally and educationally (see Matter of Hammer v Hammer, 163 AD3d 1208, 1209-1210 [2018]).
The father acknowledged that the mother's home was in a state of disrepair, but nonetheless opposed the mother's proposed relocation with the children, reasoning that he would not be able to see the children as often as he had been. The father testified that he generally exercised parenting time with the children every other weekend and that the children typically saw their paternal grandparents during his parenting time. The father testified that he had a good relationship with the children, and the mother testified favorably about the father's parenting ability. As Family Court recognized, the mother's proposed relocation would no doubt affect the frequency of the father's parenting time with the children during the school year. However, the mother testified that she was willing to facilitate daily audiovisual contact between the father and the children and that the father could have parenting time over the children's school breaks, including a substantial portion of the summer. Family Court credited the mother's testimony in this regard and reasonably found that the father's relationship with the children could be meaningfully preserved through frequent phone/audiovisual contact and extended periods of parenting time (see Matter of Tanya B. v Tyree C., 168 AD3d 1154, 1154-1155 [2019]). Under these circumstances, we find that a sound and substantial basis exists in the record to support Family Court's determination to grant the mother's relocation petition (see Matter of Lynk v Ehrenreich, 158 AD3d at 1005-1007; Matter of Spaulding v Stewart, 124 AD3d 1111, 1112-1113 [2015], lv denied 25 NY3d 903 [2015]).
However, we agree with the father that the parenting time provision set by Family Court — namely, that the father continue to have parenting time with the children "as the parties may reasonable agree[,] with a minimum period of time to be established by the parties" — was wholly inadequate under the circumstances. Although the parties had previously been able to decide upon a parenting time schedule among themselves, the mother's relocation presents geographic and financial obstacles that did not exist before. In our view, Family Court should have included specific parameters for the father's parenting time, so as to ensure that he will receive meaningful time with the children, and also should have addressed the parties' respective financial obligations regarding the transportation costs associated with such parenting time. Regrettably, given the passage of time and limited record, we cannot decide these issues ourselves (see Matter of Eldad LL. v Dannai MM., 155 AD3d 1336, 1343 [2017]). Accordingly, we remit the matter to Family Court to address the issues of the father's parenting time and associated transportation costs, in light of the parties' current circumstances.
Garry, P.J., Mulvey and Pritzker, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as provided for parenting time; matter remitted to the Family Court of Otsego County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.